PONCIANO TORRES V. STATE.

No. 26,216. January 28, 1953.

*Thomas, Thomas & Jones,* Big Spring, for appellant.

*Elton Gilliland,* District Attorney, *Hartman Hooser,* County Attorney, Big Spring, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for assault with intent to murder with malice; the punishment, five years in the penitentiary.

The undisputed evidence shows that both appellant and the prosecuting witness Louis Flores were armed with pistols; that appellant fired several shots, striking the injured party in both arms and in the abdomen. The bone of the left arm was shattered and the intestines perforated.

According to the state's proof, appellant lured the prosecuting witness from a cafe into the darkness and attempted to rob him and shot the injured party Flores when he showed resistance.

The sole question raised on the appeal is the failure of the trial court to instruct the jury to the effect that if they found "that the injured party, Flores, was armed with a pistol and was attempting to make an attack upon the Defendant with a pistol, that there would (be) an absolute presumption that the said Flores designed to inflict serious bodily injury or death upon this defendant."

This contention is raised by exception to the court's charge in the language quoted. The exception is deemed sufficient to direct the trial court's attention to the provisions of Article 1223 P.C. and to the propriety of giving a charge to the jury under that article.

Article 1223 P.C. reads as follows:

"When the homicide takes place to prevent murder, maiming, disfiguring or castration, if the weapon or means used by the party attempting or committing such murder, maiming, disfiguring or castration are such as would have been calculated to produce that result, it is to be presumed that the person so using them designed to inflict the injury."

It is the settled law of this state that under this statute an accused is entitled to have the jury instructed on the presumption arising from the use by the deceased or injured party of a deadly weapon, where the evidence viewed from the defendant's standpoint lays the predicate therefor.

The state does not contest such rule, but insists that the necessary predicate is not found in the evidence here for the

reason that there is no testimony to the effect that appellant acted to prevent Flores from killing him.

The trial court recognized appellant's testimony as raising the issue of self-defense and instructed the jury that a reasonable apprehension of death or serious bodily injury would excuse a party in using all necessary force to protect his life or person. In applying the law to the facts he further charged that if Louis Flores had made or was about to make an attack upon appellant with a gun, or by any other means—"which from the manner and character of it—caused the defendant Ponciano Torres to have a reasonable expectation or fear of death or of serious bodily injury" and that acting thereunder appellant assaulted the injured party in self-defense, to acquit him.

It was in connection with this part of the court's charge that appellant sought to have the further instruction given as to the presumption which arises under Article 1223, P.C. by the use of the gun or pistol as a deadly weapon.

The giving of the charge on self-defense is not conclusive, however. Unless the evidence required the giving in charge of the presumption provided in Article 1223 P.C. reversible error is not shown.

Appellant testified, in part: "It was there where I first saw this man, there at Jimmy's Cafe. I left Jimmy's Cafe. * * * This man was still inside when I went outside. When I got outside I walked toward the cleaners. Then the man asked me to stop. I did not know he was behind me until he hollered at me to stop. * * * I said I didn't have any business with him, why should I stop. He said I had to stop. I said that I would not stop. I did not know what he wanted. Then he made use of the pistol, the one there on the desk. I made use of mine. He drew first then I drew for my own protection. He drew first his pistol. He had his pistol inside behind the bib of his overalls. I saw his gun come out before I shot, before I pulled my pistol. I had my gun on the inside pocket of my coat. I pulled my gun out to protect myself from him so he could not shoot at me. I shot about three or four times. * * * I was not trying to kill him, just trying to defend myself, protect myself. I did not want to kill the man. All I was trying to do was keep him away from me."

The defendant's voluntary confession offered by the defense

contains the following: "The boy drew a gun and when he said that I thought he could injure me, I fired at him. From there I went home. I do not know the exact reason for the boy to draw the gun on me, but he called me in a bad tone. I have never seen the man before. I saw that he drew the gun close to the Perfect tailor shop. He did not fire at me because I did not give him time. * * * He called me, and he said 'Hey, stop!' I turned around to see who he was, then he drew a revolver. I was afraid that it had been the *chatos* that had previously fired at me and at that time I made use of my revolver."

State's witness Andres Gamboa testified: "They (referring to appellant and Flores) was walking down the sidewalk. * * * They were walking north. They were near the Perfecto Cleaners. That is on the corner of 4th Street, something like a half a block up the street from me. Next I saw them both turn around at the same time and shoot at each other. They both turned around at the same time and shot each other up. I saw them turn. I saw both of them shoot. I saw both of them shoot. I saw the defendant do some shooting. I also saw this boy shooting. Part of them was shooting this way and part this way. In other words, they were shooting each other."

In Cain v. State, 154 Tex. Cr. R. 284, 226 S.W. 2d 640, and in Threadgill v. State, 156 Tex. Cr. Rep. 157, 239 S.W. 2d 813, we pointed out that it was the use of a deadly weapon in making an assault that gives rise to the presumption provided by Article 1223 P.C., not the mere possession of the deadly weapon.

Here the testimony is such as would warrant a finding that the prosecuting witness fired a pistol or that he was about to do so at the time he was shot.

The state does not question the effect of this evidence, but insists that there is no testimony to the effect that appellant was afraid that Flores would kill him, therefore there is no evidence showing that the defendant acted to prevent murder or any other offense named in Article 1223, P.C.

We have reached the conclusion that the defense testimony as shown above was sufficient as a predicate for the giving in charge of the presumption arising under Article 1223, P.C., and the trial court erred in failing to respond to the objection based upon the omission.

The judgment is reversed and the cause is remanded.